**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JAMES GARRY STOVALL and
REGINA STOVALL, his wife,

                        Plaintiffs,

v.                                                       Case No. 3:09-cv-835-J-34JBT

H.C. HEALTHCARE, INC., a Florida
corporation d/b/a TRINITY COMMUNITY
HOSPITAL,
                        Defendant.
_____/

## O R D E R

**THIS CAUSE** is before the Court on Plaintiffs' Second Amended Complaint and Demand for Jury Trial (Doc. No. 27; Second Amended Complaint), Defendant, H.C. Healthcare, Inc., d/b/a Trinity Community Hospital's Motion to Dismiss Counts I-VII of Plaintiffs' Second Amended Complaint (Doc. No. 28; Motion to Dismiss), and Plaintiffs' Amended Response to Defendant's Motion to Dismiss Counts I-VII of Plaintiffs' Second Amended Complaint and Supporting Memorandum of Law (Doc. No. 40; Amended Response).[1]

---

[1] In the Amended Response, Plaintiffs correctly observe that, "Though Defendant styles its Motion to Dismiss as seeking to dismiss Counts I-VII of Plaintiffs' Second Amended Complaint, [Defendant] offers no argument as to why Counts V, VI, or VII should be dismissed. Indeed, in the prayer for relief contained in the Motion to Dismiss, Defendant 'respectfully requests an Order granting its Motion to Dismiss as to Counts I, II, III, and IV, and providing such other relief as the Court deems Appropriate.'" Amended Response at 2. As

**I. STANDARD OF REVIEW**

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading

---

Defendant has failed to present any argument in the Motion to Dismiss as to why Counts V, VI, and VII should be dismissed, the Court will deny Defendant's Motion to Dismiss as to those counts without further analysis and turn its attention to Defendant's arguments addressing Counts I-IV of the Second Amended Complaint.

as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 129 S. Ct. at 1949, 1951.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 570).

## II. BACKGROUND

In the Second Amended Complaint, Plaintiffs, James Garry Stovall (Mr. Stovall) and his wife, Regina Stovall (Mrs. Stovall) (collectively, the Stovalls or Plaintiffs), provide the following background for their claims.  On or about August 5, 2007, the Stovalls were driving north on U.S. Highway 41.  Second Amended Complaint at 2.  While approximately ten minutes away from Jasper, Florida, Mr. Stovall pulled to the side of the road in order to inspect his vehicle.  Id.  During Mr. Stovall's inspection of the vehicle, he was bitten by a poisonous snake.  Id. at 3.  "When [Mr. Stovall] grabbed the snake, it excreted additional venom on [his] hand via a spitting method."  Id.  Immediately after Mr. Stovall's encounter with the snake, the Stovalls "headed to Jasper, Florida in search of a hospital emergency room for examination and treatment."  Id.  En route to Jasper, Mr. Stovall began experiencing physical symptoms including "shortness of breath, heart palpitations, and joint stiffening." Id.

Upon arrival at Trinity Community Hospital, Mr. Stovall "presented to medical personnel [including Yong A. Park, M.D.], explained the circumstances of the snake bite and

his physical symptoms, and requested an examination, treatment and/or emergency medical services and care." Id. According to Plaintiffs, the medical personnel laughed in response to Mr. Stovall's description of his injury. Id. Plaintiffs also allege that the medical personnel "did not respond to [Mr. Stovall's] request for examination, treatment and/or emergency medical services and care nor did they make any attempt to stabilize [Mr. Stovall.]" Id. at 3-4. Plaintiffs claim that the medical personnel informed them that Trinity Community Hospital did not carry anti-venom and that Plaintiffs would have to seek medical treatment in Valdosta, Georgia. Id. at 4. Plaintiffs assert that the staff at Trinity Community Hospital did not offer or provide emergency transportation to an appropriate facility in Valdosta. Id. Having received no assistance or treatment, Plaintiffs departed Trinity Community Hospital and began driving to Valdosta. Id.

Soon after leaving Trinity Community Hospital, Mr. Stovall's symptoms worsened. Id. In response, Mrs. Stovall "telephoned Emergency Rescue by dialing 9-1-1." Id. Shortly thereafter, emergency rescue personnel arrived and stabilized Mr. Stovall. Id. Subsequently, Mr. Stovall was transferred by "Life Flight helicopter to Shands Jacksonville Medical Center in Jacksonville, Florida, where he was admitted and treated." Id.

Displeased with their experience at Trinity Community Hospital, the Stovalls initiated this litigation against Defendant, H.C. Healthcare, Inc. d/b/a Trinity Community Hospital, by filing a six-count complaint with this Court on August 4, 2009. See Doc. No. 1. The Stovalls filed an eight-count amended complaint (Doc. No. 4) on August 5, 2009, but the operative pleading at this juncture is the Stovalls' ten-count Second Amended Complaint. In the Second Amended Complaint, Mr. Stovall raises federal and state statutory claims as well as

common law causes of action.  See Counts I, III, V, VII, and IX of Second Amended Complaint.[2]  Mrs. Stovall has asserted a derivative claim for loss of consortium with respect to each of Mr. Stovall's claims.  See Counts II, IV, VI, VIII, and X of Second Amended Complaint.  On May 17, 2010, Defendant filed the Motion to Dismiss to which Plaintiffs have responded.[3]  Accordingly, this matter is ripe for review.

## III.  DISCUSSION

In the Motion to Dismiss, Defendant focuses on the apparent inconsistency between the claims that Plaintiffs set forth in the Second Amended Complaint.  See Motion to Dismiss at 3-4, 7-8.  Specifically, Defendant argues that the state law medical negligence claim and associated loss of consortium claim presented in counts IX-X of the Second Amended Complaint cannot coexist with the Emergency Medical Treatment and Active Labor Act (EMTALA) claims and associated loss of consortium claims found in counts I-IV of the same pleading.  Id. at 7 ("Plaintiffs are attempting to plead alternate theories of liability in this case; violations of EMTALA and medical negligence.  However, their allegations in support of each theory are diametrically opposite of one another.  Plaintiffs can't have it both ways; either

---

[2] Counts I, III, V, VII, and IX of the Second Amended Complaint are respectively entitled Failure to Provide Appropriate Medical Screening Violation of 42 U.S.C. § 1395dd(a); Failure to Provide Stabilizing Treatment or Transfer Violation of 42 U.S.C. § 1395dd(b)-(c); Failure to Provide Emergency Medical Services and Care Violation of Florida Statutes § 395.1041; Denial of Treatment for Emergency Medical Condition Violation of Florida Statutes § 401.45; Medical Negligence.  See Second Amended Complaint at 4, 6, 9, 12, and 13.

[3] On July 6, 2010, Plaintiffs filed their response to Defendant's Motion to Dismiss.  See Doc. No. 36. However, Plaintiffs later moved to file an amended response in order to "correct several citations and references to the civil docket for this case," "correct any inadvertent mischaracterizations [of Defendant's arguments]," and "present additional authority to the Court for its consideration in reviewing the issues presented in the Motion to Dismiss and Response."  See Doc. No. 37.  The Court granted Plaintiffs' motion in an Order dated July 13, 2010.  See Doc. No. 39.  Thus, the response now under the Court's consideration is the Plaintiffs' Amended Response.

[Trinity Community Hospital] violated EMTALA by refusing to treat [Mr. Stovall] at all or [Trinity Community Hospital] breached its duty of care owed to plaintiff in its provision of care and treatment to him."). For the reasons discussed below, Defendant's position, at this stage of litigation, is in error.

"In 1986, Congress enacted EMTALA in response to widely publicized reports of emergency care providers transferring indigent patients from one hospital to the next while the patients' emergency medical conditions worsened." Harry v. Marchant, 291 F.3d 767, 770 (11th Cir. 2002); Williamson v. Roth, 120 F. Supp. 2d 1327, 1333 (M.D. Fla. 2000); Gardner v. Elmore Cmty. Hosp., 64 F. Supp. 2d 1195, 1201 (M.D. Ala. 1999).

> "The purpose of EMTALA is to provide an adequate first response to a medical crisis for all patients and send a clear signal to the hospital community that all Americans, regardless of wealth or status, should know that a hospital will provide what services it can when they are truly in physical distress."

Gardner, 64 F. Supp. 2d at 1201 (internal citations and quotations omitted). However, EMTALA does not guarantee that all patients receive a proper diagnosis or even that patients receive appropriate care. Williamson, 120 F. Supp. 2d at 1333. Courts interpreting EMTALA in this circuit have consistently held that EMTALA is not intended to be a federal malpractice statute. See Harry, 291 F.3d at 770; Gardner, 64 F. Supp. 2d at 1201 ("EMTALA was not intended . . . to create a federal malpractice law. Thus, the EMTALA does not impose a uniform level of care upon covered hospitals. Nor does the EMTALA provide a cause of action against a hospital for misdiagnosis or negligent medical treatment.") (internal citations omitted); Morgan v. N. Miss. Med. Ctr., Inc., 458 F. Supp. 2d

1341, 1351-52 (S.D. Ala. 2006) (stating that the law is clear that EMTALA does not establish a federal malpractice cause of action and citing numerous authorities stating same).

Although EMTALA does not impose a uniform level of care upon hospitals, hospital emergency rooms are subject, under EMTALA, to two principal obligations: the appropriate medical screening requirement and the stabilization requirement. See 42 U.S.C. § 1395dd; Harry, 291 F.3d at 770. "The appropriate medical screening requirement obligates hospital emergency rooms to provide an appropriate medical screening to any individual seeking treatment in order to determine whether the individual has an emergency medical condition." Harry, 291 F.3d at 770 (citing 42 U.S.C. § 1395dd(a)); Correa v. Hosp. San Francisco, 69 F.3d 1184, 1192 (1st Cir. 1995) ("A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints.") (internal citations omitted). "If an emergency medical condition exists, the hospital is required to provide stabilization treatment before transferring the individual." Harry, 291 F.3d at 770 (citing 42 U.S.C. § 1395dd(b)). Accordingly, an EMTALA violation arises when a hospital "either fails to adequately screen a patient, or discharges or transfers the patient without first stabilizing the patient's emergency medical condition." Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1310 (11th Cir. 2006) (citing Harry, 291 F.3d at 770).

### A.) Count I: Violation of 42 U.S.C. § 1395dd(a)

In Count I of the Second Amended Complaint, Mr. Stovall asserts that Defendant violated EMTALA's appropriate medical screening requirement. See Second Amended

Complaint at 4-5.  EMTALA's appropriate medical screening requirement, set forth in 42 U.S.C. § 1395dd(a), provides,

> In the case of a hospital that has a hospital emergency department, if any individual (whether or not eligible for benefits under this subchapter) comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).

In Count I, Mr. Stovall alleges that when he "presented to medical personnel at Trinity Community hospital, Defendant was required under 42 U.S.C. § 1395dd(a) to provide for an appropriate medical screening examination to determine if an emergency medical condition existed."  Second Amended Complaint at 4.  Despite his request for an "examination, treatment and/or emergency medical services and care," Mr. Stovall asserts that Trinity Community Hospital "failed to conduct any medical screening examination of [Mr. Stovall] whatsoever." Id. at 3-4.  As a direct result of Defendant's failure to provide for an appropriate medical screening, Mr. Stovall contends that he suffered bodily injury, pain and suffering, disability, disfigurement, and various other permanent and continuing losses. Id. at 5.  When taken as true, Mr. Stovall's allegations that Defendant failed to provide any examination or screening whatsoever state a claim for violation of EMTALA's medical screening requirement, 42 U.S.C. § 1395dd(a). See Kizzire, 441 F.3d at 1310 ("An EMTALA violation thus arises when a hospital either fails to adequately screen a patient, or discharges or

-8-

transfers the patient without first stabilizing his emergency medical condition.") (emphasis added); Summers v. Baptist Med. Ctr. Arkadelphia, 91 F.3d 1132, 1137-38 (8th Cir. 1996) ("If a hospital fails to provide an appropriate medical screening examination, it is liable, no matter what the motivation was for this failure."); Huckaby v. E. Ala. Med. Ctr., 830 F. Supp. 1399, 1401-02 (M.D. Ala. 1993).[4] Accordingly, to the extent Defendant contends that Count I of the Second Amended Complaint fails to state a claim, the Motion to Dismiss is due to be denied.

### B.) Count III: Violation of 42 U.S.C. § 1395dd(b)-(c)

In Count III of the Second Amended Complaint, Mr. Stovall alleges that Defendant violated EMTALA's stabilization requirement, 42 U.S.C. § 1395dd(b), and the associated transfer protocols, 42 U.S.C. § 1395dd(b)-(c). Specifically, Mr. Stovall claims that "Defendant was required under 42 U.S.C. § 1395dd(b) to determine whether [he] had an emergency medical condition, and then to provide him either such further medical examination and such treatment as required to stabilize the medical condition, or to transfer him to another medical facility in accordance with 42 U.S.C. § 1395dd(c)."[5] Second Amended Complaint at 6. Mr. Stovall further asserts that "[a]t no point did Defendant offer

---

[4] The Court notes Mr. Stovall's allegation that medical personnel laughed in response to his injury while flatly refusing any medical screening. Such actions are unlikely to constitute an "appropriate medical screening examination" under 42 U.S.C. § 1395dd(a).

[5] The relevant text of 42 U.S.C. 1395dd(b) states, "In general, If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either– (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section." 42 U.S.C. § 1395dd(b)(1)(A)-(B). Subsection (c) of 42 U.S.C. § 1395dd addresses when and how transfer of an individual with an emergency medical condition is appropriate. See 42 U.S.C. § 1395dd(c).

[him] a transfer to another medical facility or inform Plaintiffs as to the risks and benefits to [Mr. Stovall] as to any such transfer, and at no point did Plaintiffs refuse to consent to any such transfer." Id. at 7.  Thus, Plaintiffs appear to contend that Defendant failed to satisfy its 42 U.S.C. § 1395dd(b) obligations to either provide further medical examination and treatment to stabilize Mr. Stovall or transfer Mr. Stovall in accordance with the procedures set forth in 42 U.S.C. § 1395dd(c).[6]  As a result of Defendant's failure to meet the requirements set forth in 42 U.S.C. § 1395dd(b)-(c), Plaintiffs allege that Defendant proximately caused Mr. Stovall to suffer bodily injury, pain and suffering, disability, disfigurement, and other permanent and continuing losses.  Second Amended Complaint at 8.

To state a claim for a violation of 42 U.S.C. § 1395dd(b), a plaintiff must "present evidence that the patient had an emergency medical condition, the hospital knew of the condition, the patient was not stabilized before being transferred, and the hospital neither obtained the patient's consent to transfer nor completed a certificate indicating the transfer would be beneficial to the patient and was appropriate." Holcomb v. Monahan, 30 F.3d 116, 117 (11th Cir. 1994). See also Harry, 291 F.3d at 774 (citing Holcomb); Williamson, 120 F. Supp. 2d at 1334-1335 (citing Holcomb); Huckaby, 830 F. Supp. at 1401-02 (M.D. Ala. 1993) ("In order to overcome a motion to dismiss under EMTALA, the plaintiff must allege that: (1) the plaintiff went to the defendant's emergency room (2) he/she had an emergency medical

---

[6] Accordingly, in Count III, Mr. Stovall also claims violations of 42 U.S.C. § 1395dd(c) based upon Defendant's failure to seek Plaintiff's written consent to transfer, Defendant's failure to obtain a signed physician certification which provided that the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweighed the increased risks to Plaintiff, Defendant's failure to provide qualified personnel and transportation equipment to effect a transfer, and Defendant's failure to provide necessary and medically appropriate life support measures for transfer. Second Amended Complaint at 7-8.

condition, and either (3) the hospital did not adequately screen him/her to determine whether he/she had such a condition, or (4) discharged or *transferred him/her before the emergency condition had been stabilized.*") (emphasis in original) (internal citation omitted).

Here, Mr. Stovall claims that after being bitten by the poisonous snake, he suffered a sudden onset of shortness of breath, heart palpitations, and joint stiffening. Second Amended Complaint at 3. The Court is of the view that, for purposes of resolving the Motion to Dismiss, these symptoms would be sufficient to meet the statutory requirement of an emergency medical condition as set forth in EMTALA. See 42 U.S.C. § 1395dd(e)(1).[7] With respect to Defendant's contention that it made no determination that an emergency medical condition existed, Mr. Stovall has asserted that he presented to and explained the circumstances of the snake bite and his symptoms to Defendant's medical personnel, including Yong A. Park, and that such medical personnel were acting within the course and scope of their employment or agency relationship with Defendant. In doing so, Mr. Stovall has adequately alleged at the motion to dismiss stage of this proceeding, that Defendant had knowledge of his emergency medical condition. Second Amended Complaint at 3. Mr. Stovall also avers that, "Defendant refused to examine or treat [him] or admit him, and instead directed him to Valdosta, Georgia." Id. at 6-7. Mr. Stovall further contends that "[a]t no point did Defendant offer [him] a transfer to another medical facility or inform Plaintiffs as to the risks and benefits to [Mr. Stovall] as to any such transfer, and at no point did Plaintiffs

---

[7]Pursuant to 42 U.S.C. § 1395dd(e), the term "emergency medical condition" means "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in–(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." See 42 U.S.C. § 1395dd(e)(1)(A)(i)-(iii).

refuse to consent to any such transfer." Id. at 7.  Additionally, Mr. Stovall claims that Defendant did not obtain or provide him with a "signed physician certification . . . which provided that the medical benefits reasonably expected from the provision of appropriate medical treatment at another medical facility outweighed the increased risks to Plaintiff." Id. Collectively, the allegations above satisfy the four elements of an EMTALA violation under Holcomb. See Holcomb, 30 F.3d at 117.  Accordingly, to the extent Defendant contends that Count III of the Second Amended Complaint fails to state a claim, the Motion to Dismiss is due to be denied.

### C.) Coexistence of Mr. Stovall's EMTALA and Medical Negligence Claims

In addition to asserting that the allegations of Counts I and III of the Second Amended Complaint fail to state a claim, Defendant argues that "plaintiffs' EMTALA claims contained in Counts I and III must be dismissed because the allegations contained in those Counts are in direct opposition to the allegations contained in the state law medical negligence claim of Count IX." Motion to Dismiss at 10.  Defendant notes that EMTALA was not intended to create a federal malpractice law but, instead, was intended to create a new cause of action, separate from traditional state medical malpractice. Id. at 7.  Thus, Defendant argues that questions regarding whether a physician or other hospital personnel failed to properly diagnose or treat a patient's condition are best resolved under existing and developing state negligence and medical malpractice theories of recovery. Id. at 8 (citing Baber v. Hosp. Corp. of Am., 977 F.2d 872, 880 (4th Cir. 1992)).  See also Harry, 291 F.3d at 773 ("EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence.").  While the Court

does not disagree with these assertions, they do not warrant dismissal of Mr. Stovall's EMTALA claims. Indeed, Defendant is simply mistaken in its contention that Plaintiffs cannot assert both EMTALA claims and state law medical negligence claims within the Second Amended Complaint. Rule 8 of the Federal Rules of Civil Procedure specifically allows a plaintiff to assert exactly the types of alternative or facially inconsistent claims that Plaintiffs present in the Second Amended Complaint. See Fed. R. Civ. P. 8(d)(2)-(3).[8] See also Allstate Ins. Co. v. James, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency.") (citations omitted). Additionally, as noted by Plaintiffs, a number of federal courts, including district courts within the Eleventh Circuit, have permitted plaintiffs to proceed in actions in which they are asserting alternative claims under EMTALA and state law medical negligence or malpractice. Amended Response at 5 (citing Williamson, 120 F. Supp. 2d 1327; Bryant v. John D. Archbold Mem'l Hosp., No. Civ.A. 6:05-CV-11, 2006 WL 1517074 (M.D. Ga. May 23, 2006)). See also Parker v. Salina Reg'l Health Ctr., 463 F. Supp. 2d 1263 (D. Kan. 2006); Lawless v. Methodist Hosp., No. CIVA 4:05CV3-M, CIVA 4:05CIV178-M, 2006 WL 1669873 (W.D. Ky. June 7, 2006); Estate of Robbins v. Osteopathic Hosp. Founders Assoc., 178 F. Supp. 2d 1221 (N.D. Okla. 2000). Moreover, Mr. Stovall's claim of medical negligence in Count IX is brought pursuant to Chapter 766, Florida Statutes. See Second Amended Complaint at 13-15. Florida Statutes § 766.106(1)(a) defines a "claim for medical negligence" as a claim "arising out of the rendering of, or the failure to render, medical care

---

[8]"A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3) (emphasis added).

or services." Fla. Stat. § 766.106(1)(a) (emphasis added); see also J.B. v. Sacred Heart Hosp. of Pensacola, 635 So. 2d 945, 948-49 (Fla. 1994). Accordingly, the Court finds no impermissible inconsistency between Mr. Stovall's claims that Defendant failed to examine him or provide him the requisite services and the maintenance of a medical negligence action to recover for such failures. Although at some future point in this litigation the existence of an EMTALA claim and a state law medical negligence claim may prove incompatible, no such problem presently exists.[9]

## IV. CONCLUSION

Therefore, upon consideration, it is hereby **ORDERED**:

1. Defendant H.C. Healthcare, Inc. d/b/a Trinity Community Hospital's Motion to Dismiss Counts I-VII of Plaintiffs' Second Amended Complaint (Doc. No. 28) is **DENIED**.

2. Defendant H.C. Healthcare, Inc. d/b/a Trinity Community Hospital shall respond to Plaintiffs' Second Amended Complaint and Demand for Jury Trial (Doc. No. 27) on or before **March 4, 2011**.

**DONE AND ORDERED** in Jacksonville, Florida, this 16th day of February, 2011.

MARCIA MORALES HOWARD
United States District Judge

---

[9] As the Court finds that Defendant's Motion to Dismiss is due to be denied with regard to Plaintiffs' EMTALA claims in Counts I and III of the Second Amended Complaint, Defendant's Motion to Dismiss will also be denied as to the respective loss of consortium claims found in Counts II and IV of the Second Amended Complaint.

lc14
Copies to:
Counsel of Record